UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO: 7:12-CR-37-FA-10
7:18-CV-24-FA

LUIS RENTERIA

      Movant,

v.                                        MEMORANDUM OPINION AND ORDER

UNITED STATES OF AMERICA,

      Respondent.


      Luis Renteria filed a pro se Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  See ECF Nos. 908 and 912.  The government filed a motion to dismiss, a memorandum in support of that motion, and an additional supplemental memorandum.  See ECF Nos. 913, 914, and 990.  Renteria responded to the motion to dismiss, as well as the supplemental memorandum.  See ECF Nos. 916 and 1023.  Renteria also filed a motion for an evidentiary hearing, see ECF No. 918, as well as two motions to amend the Motion to Vacate.  See ECF Nos. 938 and 986.  On March 31, 2021, the court denied the motion to vacate.  The reasons for that decision follow.

I.

      On March 26, 2014, a federal grand jury sitting in the Eastern District of North Carolina returned a Third Superseding Indictment charging Luis Renteria and various co-conspirators

with multiple counts.  See ECF No. 347.  Renteria was charged with conspiracy to commit kidnapping in violation of 18 U.S.C. § 1201(c), (Count One); three counts of use of facilities of interstate commerce in the commission of a murder, in violation of 18 U.S.C. § 1958(a), (Counts Five, Six, and Seven); and a drug conspiracy involving at least five kilograms or more of cocaine, in violation of 21 U.S.C. § 846, (Count Eight).

On August 13, 2014, pursuant to a written plea agreement, Renteria pled guilty to Count Eight.  See ECF No. 402.  Pursuant to the terms of the plea agreement, the government would dismiss Counts One, Five, Six, and Seven.  The government "reserve[d] the right to make a sentence recommendation, to pursue all applicable sentencing enhancements, including, without limitation, the U.S.S.G. § 2D1.1(d)(1), and to pursue any applicable grounds for an upward departure and an upward variance."  Id.

On August 10, 2015, Renteria filed a motion to strike his Memorandum of Plea Agreement based upon alleged prosecutorial misconduct.  See ECF No. 665.  Renteria asked to proceed to sentencing on Count Eight as scheduled and that all remaining counts be dismissed.  The court determined that it did not have the authority to simply strike a plea agreement.  See ECF Nos. 690 and 757.  Instead, following the procedure laid out in Rule 11(c)(5), the court informed the parties that it was rejecting the plea agreement.  The court further advised the defendant that it was not authorized to follow the plea agreement and gave

Renteria an opportunity to withdraw his guilty plea. Both Renteria and his counsel confirmed that he did not wish to withdraw his plea of guilty. Both parties agreed that a new plea colloquy was not necessary and that the matter could proceed to sentencing. See ECF No. 757.

On December 16, 2015, Renteria was sentenced to term of life imprisonment on Count Eight. See ECF No. 722. The court applied the cross-reference for first degree murder, U.S.S.G. §§ 2D1.1(d)(1), 2A1.1 (2014). See ECF Nos. 708 and 709. Renteria appealed the district's court application of the cross reference for murder. See United States v. Renteria, No. 16-4021, 671 F. App'x 170 (4th Cir. Dec. 16, 2016). The United States Court of Appeals for the Fourth Circuit affirmed, holding that the court did not err in applying the cross reference because the evidence showed that Renteria paid coconspirators to kidnap, torture, and murder Geniro Jamis. See id.

In his § 2255 motion, Renteria listed the following grounds for habeas relief:

1) Ineffective assistance of counsel due to failure to secure a more favorable plea agreement;

2) Ineffective assistance of counsel for failure to raise certain arguments against the evidence presented in favor of the application of the USSG § 2D1.1 enhancement, specifically, a failure to unearth evidence regarding the "Calderon brothers";

3) Ineffective assistance of counsel for failure to recognize a "mandatory life imprisonment" clause in the plea agreement;

3

4)   Ineffective assistance of appellate counsel
     for failure to file a writ of certiorari to
     the United Supreme Court;

5)   Ineffective assistance of counsel for failing to
     contest the testimony of the "Calderon brothers";
     and

6)   Prosecutorial misconduct for knowingly introducing
     false testimony at sentencing.

He later added claims stating that he was entitled to relief under United States v. Davis, 139 S. Ct. 2319, 2336 (2019), and that the court applied the wrong evidentiary standard in applying the first degree murder cross reference.

II.

Section 2255(a) of Title 28 provides as follows:

> (a) A prisoner in custody under sentence of a
> court established by Act of Congress claiming the
> right to be released upon the ground that the
> sentence was imposed in violation of the
> Constitution or laws of the United States, or
> that the court was without jurisdiction to impose
> such sentence, or that the sentence was in excess
> of the maximum authorized by law, or is otherwise
> subject to collateral attack, may move the court
> which imposed the sentence to vacate, set aside
> or correct the sentence.

28 U.S.C.A. § 2255(a).

Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint by way of a motion to dismiss. See In re Birmingham, 846 F.3d 88, 92 (4th Cir. 2017); Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Laboratories, Inc. v.

4

<u>Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993); <u>see also</u> <u>Ibarra v.</u>
<u>United States</u>, 120 F.3d 474, 474 (4th Cir. 1997). As the Fourth
Circuit has explained, "to withstand a motion to dismiss, a
complaint must allege 'enough facts to state a claim to relief
that is plausible on its face.'" <u>Painter's Mill Grille, LLC v.</u>
<u>Brown</u>, 716 F.3d 342, 350 (4th Cir. 2013) (<u>quoting</u> <u>Bell Atl. Corp.</u>
<u>v. Twombly</u>, 550 U.S. 544, 570 (2007)).

 The government may challenge the legal sufficiency of a
section 2255 petition through a motion to dismiss under Rule
12(b)(6). <u>See</u> Rule 12, Rules Governing Section 2255 Proceedings
("The Federal Rules of Civil Procedure, to the extent that they
are not inconsistent with any statutory provisions of these
rules, may be applied under these rules."); <u>United States v.</u>
<u>Frady</u>, 456 U.S. 152, 166 n.15 (1982); <u>United States v. Reckmeyer</u>,
No. 89-7598, 900 F.2d 257, at *4 (4th Cir. Apr. 2, 1990)
(unpublished table decision). Moreover, a court may take
judicial notice of public records without converting a motion to
dismiss into a motion for summary judgment. <u>See</u> <u>Philips v. Pitt</u>
<u>Cnty. Mem'l Hosp.</u>, 572 F.3d 176, 180 (4th Cir. 2009) (in
reviewing a 12(b)(6) motion to dismiss, the court may take
judicial notice of matters of public record without converting
the motion to dismiss into one for summary judgment). In
reviewing a section 2255 motion, the court is not limited to the
motion itself. The court also may consider "the files and

Case 7:12-cr-00037-FA   Document 1057   Filed 04/01/21   Page 5 of 23

records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

III.

A.     *Ineffective Assistance of Trial Counsel*

The standards established by the United States Supreme Court in determining whether a defendant was denied his Sixth Amendment right to effective assistance of counsel are set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). Under Strickland, a plaintiff must show (1) that counsel's performance was so deficient that it "fell below an objective standard of reasonableness," and (2) that counsel's deficiency resulted in prejudice so as to render the results of the trial unreliable. See id. at 687-92. Counsel's performance is entitled to a presumption of reasonableness. See id. at 689. Thus, a habeas plaintiff challenging his conviction on the grounds of ineffective assistance must overcome a strong presumption that the challenged actions constituted sound trial strategies. See id. The Court in Strickland cautioned against the ease in second-guessing counsel's unsuccessful assistance after the adverse conviction and sentence are entered. See id. The Fourth Circuit Court of Appeals specifically recognized that ineffective assistance of counsel may not be established by a "Monday morning quarterbacking" review of counsel's choice of trial strategy. Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991), cert. denied, 506 U.S. 1087 (1993).

6

"To show prejudice in the guilty-plea context, the petitioner must 'demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" <u>Christian v. Ballard</u>, 792 F.3d 427, 443-44 (4th Cir. 2015)(quoting <u>Premo v. Moore</u>, 562 U.S. 115, 129 (2011)).

> [T]he <u>Strickland</u> standard "is a most deferential one." <u>Harrington</u>, 562 U.S. at 105, 131 S. Ct. 770. "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge" and "[i]t is all too tempting to second-guess counsel's assistance after conviction or adverse sentence." <u>Id.</u> (internal quotation marks omitted). . . .

>                   * * *

> "[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system," <u>Blackledge v. Allison</u>, 431 U.S. 63, 71, 97 S. Ct. 1621, 52 L. Ed.2d 136 (1977), and the advantages that they provide to all concerned "can be secured . . . only if dispositions by guilty plea are accorded a great measure of finality." <u>Id.</u> "[R]epresentations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." <u>Id.</u> at 73-74, 97 S. Ct. 1621. Such "[s]olemn declarations in open court carry a strong presumption of verity" and "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." <u>Id.</u> at 74, 97 S. Ct. 1621. "More often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea," because "[i]f he succeeds in vacating the

7

> judgment of conviction, retrial may be
> difficult." Blackledge, 431 U.S. at 71, 97 S.
> Ct. 1621.  "These considerations make strict
> adherence to the Strickland standard all the more
> essential when reviewing the choices an attorney
> made at the plea bargain stage." Premo, 562 U.S.
> at 125, 131 S. Ct. 733.

Id. at 444.

Under the second prong of Strickland, a petitioner must

show that the errors were "sufficiently serious as to deprive the

defendant of a fair trial, a trial whose result is reliable."

Strickland, 466 U.S. at 687.  Furthermore, a court may address

the two prongs in any order and a failure to establish one prong

obviates a need to address the other.  Id. at 697 ("Although we

have discussed the performance component of an ineffectiveness

claim prior to the prejudice component, there is no reason for a

court deciding an ineffective assistance claim to approach the

inquiry in the same order or even to address both components of

the inquiry if the defendant makes an insufficient showing on

one.  In particular, a court need not determine whether counsel's

performance was deficient before examining the prejudice suffered

by the defendant as a result of the alleged deficiencies.  The

object of an ineffectiveness claim is not to grade counsel's

performance.  If it is easier to dispose of an ineffectiveness

claim on the ground of lack of sufficient prejudice, which we

expect will often be so, that course should be followed.  Courts

should strive to ensure that ineffectiveness claims not become so

8

burdensome to defense counsel that the entire criminal justice system suffers as a result.").

As discussed above, under <u>Strickland</u>, not only must Renteria show that his counsel's performance was deficient, he also must show that he was prejudiced by that performance. A court can reasonably reject a petitioner's claim of prejudice if the "decision to reject the plea agreement and proceed to trial . . . would not have been a rational one." <u>Christian</u>, 792 F.3d at 452 (citing <u>Padilla v. Kentucky</u>, 559 U.S. 356, 372 (2010)).

> When evaluating objective reasonableness under the prejudice prong of <u>Strickland</u>, "[t]he challenger's subjective preferences . . . are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." <u>United States v. Fugit</u>, 703 F.3d 248, 260 (4th Cir. 2012). The challenger "cannot make that showing merely by telling [the court] now that [he] would have gone to trial then if [he] had gotten different advice." <u>Pilla v. United States</u>, 668 F.3d 368, 372 (6th Cir. 2012). In other words, to obtain relief from a guilty plea, the defendant must do more than allege he would have insisted on going to trial if counsel had not misadvised him as to the consequences of that decision. The "petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." <u>Padilla</u>, 559 U.S. at 372, 130 S. Ct. 1473; <u>see also</u> <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 486, 120 S. Ct. 1029, 145 L. Ed.2d 985 (2000).

<u>Id.</u> at 452-53.

Case 7:12-cr-00037-FA   Document 1057   Filed 04/01/21   Page 9 of 23

1. *Failure to Secure a More Favorable Plea Agreement*

Renteria's conclusory allegations that counsel should have negotiated a more favorable plea agreement are insufficient to demonstrate that counsel's representation fell below an objective standard of reasonableness or that counsel's representation prejudiced his case. Renteria's after-the-fact dissatisfaction with the sentence ultimately imposed does not mean that his counsel rendered ineffective assistance. See Hunter v. United States, 160 F.3d 1109, 1115 (6th Cir. 1998) (explaining that counsel is not constitutionally ineffective simply because a petitioner believes he or she "could have gotten a better deal"); see also Easton v. United States, No. 3:14-cv-00372-MOC, 2014 WL 4854584, at *4 (W.D.N.C. Sept. 30, 2014) (no viable "Sixth Amendment claim where a defendant merely speculates that he could have gotten a better deal if counsel had not negotiated a plea. If that were the case, there would be no finality as to any Judgment as every decision to take a plea would then be subject to open-ended collateral review based on subjective beliefs.").

In this case, the plea agreement was favorable to defendant because it secured dismissal of four of the charges against him, including a count that likely would have resulted in a mandatory life sentence. See ECF No. 763 at 9 ("The advantages I see are that there is a sentencing range of ten to life in this particular case, whereas a conviction or a kidnapping resulting

in murder I expect would likely have a mandatory life sentence. So that gives the court some discretion in sentencing in this case. That's the primary reason for us pursuing this.").

Furthermore, Renteria testified <u>at his plea hearing</u> that he was satisfied with the performance of his counsel. <u>See</u> ECF No. 763 at 26.

> Q: Have you been honest with Mr. McCoppin and told him all the facts?
>
> A: Yes.
>
> Q: Has he answered all of your questions to your satisfaction?
>
> A: Yes.
>
> Q: Are you satisfied with the quality of Mr. McCoppin's services as your attorney?
>
> A: Yes.

<u>Id.</u> at 26-27. Such statements "constitute a formidable barrier" to attacking counsel in this collateral proceeding. <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977).

Because Renteria has proffered no evidence that a more favorable plea agreement was available, he also cannot show <u>Strickland</u> prejudice. <u>See</u> <u>Horne v. United States</u>, 1:19CV196, 2020 WL 7408240, *4 (M.D.N.C. May 21, 2020) (finding that petitioner's claim of ineffective assistance of counsel "fails for lack of prejudice, because there is no evidence in the record that the Government would have offered a more favorable plea agreement."); <u>Good v. United States</u>, Civil No. 2:17cv313, 2018 WL 2976984, *6 (E.D. Va. June 12, 2018) ("[I]t appears that

11

Petitioner's counsel obtained a valuable benefit for him as a part of the plea negotiations, and the Court thus declines Petitioner's invitation to second-guess counsel's negotiation strategy on the basis that she might have done better. Therefore, Petitioner's claim of ineffective assistance of counsel on the basis that his counsel failed to negotiate a better plea agreement is DENIED because he has shown neither that counsel's performance was deficient nor prejudicial."); <u>Dowell v. United States</u>, Crim. No.: GJH-16-208, 2018 WL 705301, *3 (D. Md. Feb. 2, 2018) ("Nor can Dowell credibly argue that he would have been able to secure a more favorable plea agreement. . . [t]herefore, Dowell's claim of ineffective assistance of counsel fails."); <u>Thomas v. United States</u>, Civil Action No. RWT-11-1049, 2014 WL 4546044, *4 (D. Md. Sept. 11, 2014) (Petitioner's "argument, that counsel failed to negotiate a more favorable plea agreement, is groundless. . . where [he] benefitted substantially from counsel's negotiated plea agreement."); <u>Florence v. United States</u>, 1:07CV489, 2008 WL 11422464, *4 (M.D.N.C. Feb. 28, 2008) (no ineffective assistance of counsel where "nothing in the record demonstrates . . . that a better plea agreement could have been negotiated"); <u>Gomez v. United States</u>, Nos. 3:07cv388, 2007 WL 3232535, *2 (W.D.N.C. Oct. 31, 2007) (no ineffective assistance of counsel where "Petitioner present[ed] no evidence showing that a more favorable plea agreement was available from the government.").

Furthermore, counsel's inability to obtain a more
favorable plea agreement was not objectively unreasonable given
the facts regarding Renteria's conduct.  As Renteria's counsel
acknowledged at the hearing on his motion to strike the plea
agreement:  "I would re-emphasize that the defendant entered a
voluntary and knowing plea of guilty, and he has never changed
his course from entering that guilty plea to Count 8 on drug
conspiracy."  ECF No. 757 at 4-5.  Not only did Renteria indicate
that he was pleading guilty voluntarily and of his own free will
at his original plea hearing, see ECF No. 763, at the later
hearing he swore under oath that he wanted to persist in his plea
of guilty to Count Eight.  See ECF No. 757 at 20.  Therefore,
Renteria's assertions that his plea of guilty to Count Eight was
not knowing and voluntary are belied by the record.

One final point bears mentioning.  In support of his
argument that the government breached the plea agreement,
Renteria cites United States v. Edgell, 914 F.3d 281 (4th Cir.
2019).  In Edgell, the court held that the government had
breached its plea agreement with the defendant when it failed to
"stand by its drug conduct stipulation, and its recommendation of
a sentence inconsistent with that stipulation."  Id. at 289.

In this case, the plea agreement contained an appeal
waiver.  As noted above, the court ultimately rejected the plea
agreement which allowed Renteria to file a direct appeal of his
sentence.  Despite the court's rejection of the plea agreement,
the government nevertheless went through with its promise to

13

dismiss the additional counts at sentencing. Therefore, not only did Renteria get the benefits of the terms counsel negotiated in the plea agreement, he reaped the additional benefit of being allowed to appeal when he otherwise would not have been able to do so. Therefore, Renteria's protestations to the contrary, the only party not receiving the benefits negotiated under the plea agreement (which was rejected) was the government. There is no Edgell issue in this case. Under these circumstances, the court cannot say that counsel was ineffective in negotiating Renteria's plea. Thus, the court finds that Renteria has failed to allege a meritorious claim of ineffective assistance of counsel during the plea negotiation stage of the case.

2. *Failure to Recognize a "Mandatory life imprisonment" clause in plea agreement*

This argument is facially implausible. First, there was no "mandatory life imprisonment" clause in the plea agreement. See ECF No. 402. What was in the plea agreement was an acknowledgment that the maximum statutory penalty was a term of imprisonment of life which the court further discussed with Renteria in the plea colloquy. See ECF No. 763 at 11. Also in the plea agreement was an explicit acknowledgment that the government could pursue "all applicable sentencing enhancements, including, without limitation, . . . U.S.S.G. § 2D1.1(d)(1)." ECF No. 402. At the later hearing on the motion to strike the plea agreement, defense counsel acknowledged that "[t]he plea agreement specifically states that the Government is seeking that

14

enhancement. . . ." ECF No. 757 at 7. The first degree murder enhancement was not a mandatory life sentence nor did it come as a surprise. In any event, the court rejected the plea agreement so had such a mandatory clause existed it would be of no effect.

3. *Performance at sentencing regarding treatment of "Calderon brothers"*

Renteria faults his counsel's performance at sentencing. He argues that counsel should have done more to investigate the Calderon brothers and that counsel should have contested their testimony. Renteria's argument is without merit.

> A movant alleging his trial counsel's ineffectiveness in failing to investigate in habeas proceedings must demonstrate that an investigation would have revealed information presenting a reasonable probability of a different result in the criminal proceedings. "[B]are allegations do not suffice: 'A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993), quoting United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989).

Shrader v. United States, Civil Action No. 1:13-33098, 2015 WL 13745348, *8 (S.D.W. Va. July 24, 2015).

Significantly, Renteria has provided no evidentiary support for his claim that further investigation of the Calderon brothers would have helped his defense. See Jones v. Polk, 401 F.3d 257, 269-70 (4th Cir. 2005) (holding that speculative and conclusory allegations will not support habeas claim in federal court or justify the holding of an evidentiary hearing). He

claims, without offering any proof, that further investigation would have revealed that the Calderons were the only ones behind the murder of Jamis. However, after taking evidence on the issue, the court concluded that Renteria was involved and the appeals court affirmed that decision.

Even assuming without deciding that Renteria's counsel provided deficient representation by failing to do more to investigate the Calderon brothers, his claim must fail because he suffered no prejudice from the alleged deficient representation. When a defendant alleges ineffective assistance of counsel due to his counsel's "failure to investigate or discover potentially exculpatory evidence" the prejudice inquiry will often revolve around the likely impact or success of such evidence or defense. Hill v. Lockhart, 474 U.S. 52, 59 (1985). Renteria merely speculates that the court would not have applied the first degree murder cross reference if his trial counsel had further investigated. This is insufficient to show Strickland prejudice.

Renteria's claim that counsel was deficient for failing to contest the testimony of the Calderon brothers likewise fails. Counsel for Renteria consistently objected to application of the first degree murder cross reference. See ECF Nos. 667, 765. The record also shows that, at sentencing, counsel for Renteria vigorously cross-examined Reynaldo Calderon (the only one of the Calderon brothers to testify at his sentencing hearing). See ECF Nos. 642 and 643.

Our appeals court has repeatedly made clear that "[p]leading guilty typically entails a deliberate choice to accept the risks and rewards of a deal, and that decision may not be casually set aside on the basis of buyer's remorse." Dingle v. Stevenson, 840 F.3d 171, 174 (4th Cir. 2016). That is why, "[i]n cases such as this, 'strict adherence to the Strickland standard [is] all the more essential[.]'" Christian v. Ballard, 792 F.3d 427, 454 (4th Cir. 2015)(quoting Premo v. Moore, 562 U.S. 115, 125 (2011)). The record shows that Renteria's plea was knowing and voluntary so his after-the-fact contentions that his trial counsel and/or the government tricked him into pleading guilty are contradicted by the record. For all these reasons, Renteria's attempt to sidestep the consequences of his guilty plea via a claim of ineffective assistance of counsel fails.

B.      *Ineffective Assistance of Appellate Counsel*

Renteria argues that his appellate counsel was ineffective for failing to petition the Supreme Court for a writ of certiorari. According to him, appellate counsel "rebuffed movant's written instruction to contest to the Supreme Court the sole issue attested on direct appeal." ECF No. 912-1.

There is "no constitutional right to the assistance of counsel in filing a petition for a writ of certiorari." United States v. McCall, Criminal No. 3:10CR170-15-HEH, 2014 WL 4292828, *5 (Aug. 29, 2014) (citing Ross v. Moffitt, 417 U.S. 600, 616-18 (1974)). The Fourth Circuit's Criminal Justice Act Plan ("CJA

Case 7:12-cr-00037-FA   Document 1057   Filed 04/01/21   Page 17 of 23

Plan") does, however, impose obligations on appellate counsel to provide certain notices and assistance to a criminal defendant.

> Every attorney, including retained counsel, who represents a defendant in this Court shall continue to represent his client after termination of the appeal unless relieved of further responsibility by this Court or the Supreme Court. Where counsel has not been relieved: If the judgment of this Court is adverse to the defendant, counsel shall inform the defendant, in writing, of his right to petition the Supreme Court for a writ of certiorari. If the defendant, in writing, so requests and in counsel's considered judgment there are grounds for seeking Supreme Court review, counsel shall prepare and file a timely petition for such a writ and transmit a copy to the defendant. Thereafter, unless otherwise instructed by the Supreme Court or its clerk, or unless any applicable rule, order or plan of the Supreme Court shall otherwise provide, counsel shall take whatever further steps are necessary to protect the rights of the defendant, until the petition is granted or denied.
>
> If the appellant requests that a petition for writ of certiorari be filed but counsel believes that such a petition would be frivolous, counsel may file a motion to withdraw with this Court wherein counsel requests to be relieved of the responsibility of filing a petition for writ of certiorari. The motion must reflect that a copy was served on the client.

CJA Plan Section 2. Courts have concluded that a counsel's failure to follow the Fourth Circuit's CJA plan does not give rise to a claim of ineffective assistance of counsel. See Moody v. United States, Nos. 5:13-CR-00065-F, 5:15-CV-00490-F, 2016 WL 3023264, *2 (E.D.N.C. May 24, 2016) ("[I]t appears that counsel failed to comply with the Fourth Circuit's CJA Plan. Failing to file a requested petition for certiorari does not violate the

Sixth Amendment."); <u>Devine v. United States</u>, Nos. 5:07-CR-10-D, 5:10-CV-91-D, 2011 WL 1675089, *1 (E.D.N.C. May 3, 2011) ("[B]ecause a defendant has no right to assistance of counsel when petitioning the Supreme Court for discretionary review, Devine's appellate counsel was not constitutionally ineffective."); <u>Carter v. United States</u>, Nos. 3:09cv14, 3:05cr82, 2010 WL 3619252, *4 (W.D.N.C. Sept. 10, 2020) ("While failure of counsel to perfect a discretionary appeal may well violate the Fourth Circuit CJA Plan, it does not rise to the level of constitutionally deficient representation under <u>Strickland</u>; thus, this Court can afford no relief.").

In this case, however, the record shows that appellate counsel <u>did</u> follow the CJA plan. The required Certiorari Status Form was timely filed. <u>See</u> ECF No. 52 in USCA No. 16-4021. Appellate counsel also moved to withdraw as counsel "on the grounds that a certiorari petition would be frivolous" in order to "reliev[e] counsel of the responsibility of filing a petition for writ of certiorari."). ECF No. 53. The Fourth Circuit granted her motion to withdraw. <u>See</u> ECF No. 54. Accordingly, there is neither a violation of the CJA plan nor of the Sixth Amendment and Renteria's claim fails. <u>See</u> <u>United States v. McCall</u>, Criminal No. 3:10CR170-15-HEH, 2014 WL 4292828, *5 (E.D. Va. Aug. 29, 2014) (holding no merit to ineffective assistance of counsel claim where after appellate counsel "made a reasonable decision not to further pursue an unmeritorious appeal . . . [petitioner] could have pursued a writ of certiorari on his own,

19

but he did not do so . . . and no request to the Fourth Circuit was made to appoint counsel"); United States v. Harris, No. 2:09CR00002, 2012 WL 32934, *9 (W.D. Va. Jan. 6, 2012) ("The undisputed evidence indicates that counsel complied with his obligations under the CJA Plan with regard to the defendant's right to file a certiorari petition.  Therefore, Harris fails to demonstrate any respect in which counsel's representation was deficient.").

C.    *Prosecutorial Misconduct*

Renteria contends, without citing any specific evidence, that the government committed misconduct by knowingly entering false testimony.  He does not cite with any specificity the nature of the false evidence but merely points to the Calderons. He is presumably referring to Reynaldo Calderon's testimony against him implicating him in the murder of Geniro Jamis.

"[T]he test for reversible prosecutorial misconduct generally has two components:  that (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." United States v. Chorman, 910 F.2d 102, 113 (4th Cir. 1990).  In this case, there is no evidence of either improper conduct by the government or any adverse impact on Renteria's substantial rights.  See United States v. Roane, 378 F.3d 382, 401 (4th Cir. 2004) (holding that conclusory allegations of

prosecutorial misconduct do not warrant an evidentiary hearing or form a basis for relief).

There is no evidence that the government offered perjured testimony. Renteria's allegations in this regard are conclusory and, therefore, subject to dismissal. With respect to the government's late disclosure of Agent Eubanks' visit with Reynaldo Calderon on September 28, 2013, the court has already found that there was no prosecutorial misconduct. ECF No. 757 at 12, 17; ECF No. 706. Furthermore, there is no evidence that the late disclosure affected Renteria's substantial rights. First, the visit was disclosed prior to the sentencing hearing so counsel for defendant was able to use that evidence to cross-examine both Calderon and Eubanks. Second, as already discussed, the court rejected the plea agreement and Renteria was given the opportunity to withdraw his plea of guilty. See ECF No. 757. He chose not to do so. See ECF No. 757 at 20. Renteria received every aspect of the relief that his counsel requested in order to cure the allegedly late disclosure. See ECF Nos. 665 and 757. This claim is without merit.

D.      *Davis Issue*

Renteria claims that he is entitled to relief under United States v. Davis, 139 S. Ct. 2319, 2336 (2019). In Davis, the Supreme Court held that 18 U.S.C. § 924(c)(3)(B)'s residual clause definition of "crime of violence" as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of

committing the offense," was unconstitutionally vague.  Id. at 2336.  This was so, the Court held, since it required a "categorical" approach for determining whether an offense qualified as a crime of violence, wherein a judge would disregard how the defendant actually committed the crime and instead estimate "the degree of risk posed by a crime's imagined 'ordinary case.'"  Id. at 2326.

Davis has no bearing on Renteria's case which was based upon a guilty plea to drug conspiracy, in violation of 21 U.S.C. § 846.  This claim is without merit.  See, e.g., Carver v. United States, CASE NO. 4:14-CR-7-1-CDL-MSH, 2019 WL 4891046, at *1 n.1 (M.D. Ga. Aug. 14, 2019) ("Because the Court finds that Davis does not apply to Petitioner's drug conviction, however, that decision does not affect the Court's analysis of Petitioner's claim.").

E.    *U.S.S.G. § 2D1.1(d)(1) Cross Reference*

Renteria argues that the court applied the wrong evidentiary standard in applying the U.S.S.G. § 2D1.1(d)(1) cross reference to § 2A1.1.  This argument goes nowhere.  The United States Court of Appeals has confirmed on multiple occasions, including in this case, that the preponderance of the evidence standard applies.  See United States v. Renteria, 671 F. App'x 170, 170 (4th Cir. 2016); United States v. Gibson, 328 F. App'x 860, 865 (4th Cir. 2009); United States v. Beasley, 276 F. App'x 274, 276 (4th Cir. 2008).  Renteria is not entitled to relief on this claim.

22

III.

For all these reasons, the court **GRANTED** the government's motion to dismiss, **DENIED** Renteria's Motions to Vacate, and **DISMISSED** this matter from the court's active docket. The Motion for an Evidentiary Hearing was **DENIED** and the Motions to Amend were **GRANTED.**

Additionally, the court has considered whether to grant a certificate of appealability. See 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001). The court concludes that the governing standard is not satisfied in this instance. Accordingly, the court **DENIES** a certificate of appealability.

The Clerk is directed to send copies of this Memorandum Opinion and Order to Luis Renteria, counsel of record, the United States Marshal, and the Probation Office of this court.

**IT IS SO ORDERED** this 1st day of April, 2021.

ENTER:

David A. Faber

David A. Faber
Senior United States District Judge

23